UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN D. MURPHY,<br><br>Defendant | Criminal No. 1:24-CR-10074-WGY |

# UNITED STATES' SENTENCING MEMORANDUM[1]

The United States of America, by and through the undersigned counsel, submits this memorandum to support its sentencing recommendation. Defendant John D. Murphy pleaded guilty to nine counts of Possessing Animals for Use in Animal Fighting Venture, in violation of Title 7, United States Code, Section 2156(b). Consistent with the plea agreement between the parties, the United States respectfully requests the Court sentence the Defendant to a term of imprisonment within the applicable guidelines range as determined by this Court and specifically recommends 18 months imprisonment. Additionally, the United States recommends a $10,000 fine, and three years of post-release supervision, to include a prohibition on possessing pit-bull type dogs.

---

[1] The parties conferred and Defendant does not object to admission of Attachments A and B referenced herein. Accordingly, the government will seek to admit Attachments A and B at the outset of the sentencing hearing.

1

## I. BACKGROUND

### A. Introduction

The United States submits this memorandum in support of the sentence that the United States requests. This memorandum sets forth facts and law in support of the United States' recommendation. As this is the first federal dog fighting sentence in this district, and there is insufficient Judiciary Sentencing Information available for these charges (Presentence Investigation Report (PSR) ¶ 110), this memorandum also provides case law from other districts to provide context for how other federal districts have approached sentencing in dog fighting cases. This memorandum and its attachments will illustrate, based on that precedent and the facts of this case, the appropriateness of a sentence at the high end of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range, as calculated by the United States Probation Office in its PSR, for Defendant.

### B. Legal Framework

The Animal Welfare Act makes it unlawful to "knowingly sponsor or exhibit an animal in an animal fighting venture" – *i.e.*, the animal fights themselves. 7 U.S.C. § 2156(a)(1). Congress also criminalized the many predicate activities without which animal fighting would not occur. It is accordingly unlawful to "knowingly sell, buy, possess, train, transport, deliver, or receive any animal for purposes of having the animal participate in an animal fighting venture." 7 U.S.C. § 2156(b). Each of these violations is punishable by the same maximum statutory penalty – five years in prison. 18 U.S.C. § 49.

### C. Background Regarding Dog Fighting

Organized dog fighting of the type involved in this case bears no resemblance to the quarreling that pet dogs might do in a backyard over a toy. It is an extreme form of cruelty to

animals – not only inside the fighting ring itself, but also in the specific practices leading up to a fight and, if either dog survives, after a fight. A survey of the grotesque rituals of the dog fighting "industry" can be found in an annotated memorandum authored by Judge Reagan of the Southern District of Illinois as part of the sentencing proceedings in *United States v. Berry, et al.*, 3:09-cr-30101, 2010 *WL* 1882057 (S.D. Ill., May 11, 2010) (included as Attachment A).[2]

This survey summarizes the nature of the crime, the burden it places on communities, and its links to other types of criminal activity. As Judge Reagan's memorandum shows, dog fighters take cruel advantage of pit bull-type dogs' eagerness to please humans, all for gambling purposes, financial gain, or a disturbing form of "entertainment."

### D. Federal Dog Fighting Sentencing Case Law

Congress first enacted the federal animal fighting prohibition in 1976. *See* Pub. L. No. 94-279, § 17, Apr. 22, 1976, 90 Stat. 421. It was prosecuted for the first time twenty-two years later, and not again until the prosecution of Michael Vick in 2007. The Vick case, for the first time, exposed the public to the true "horrors of dog fighting," Att. A at 7, including the acute animal suffering that occurs before, during, and after dog fights. In particular, the defendants in that case admitted as part of their guilty pleas to having drowned, hung, and bludgeoned underperforming fighting dogs to death. The following year, Congress increased the penalty to a five-year felony and significantly broadened the scope of the offense. *See* Pub. L. No. 110-234, Title XIV, § 14207(a), May 22, 2008, 122 Stat. 1461 (initial passage); Pub. L. No. 110-246, § 4(a), Title XIV, § 14207(a), June 18, 2008, 122 Stat. 1664, 2223 (re-enacting entire Farm Bill after enrollment glitch).

---

[2] Some of the defendants in *Berry* challenged the district court's reliance on this memorandum on appeal. The Seventh Circuit rejected this challenge, affirming both the district court's use of its own sentencing memorandum, and the above-Guidelines sentences imposed in that dog fighting case. *See United States v. Courtland, et al.*, 642 F.3d 545, 551 (7th Cir. 2011).

Since that time, federal and state authorities have increased prosecutions in the subject matter area. Even so, only a few dozen defendants have been prosecuted in federal dog fighting cases since the first federal prosecution in 1998. From this relatively small body of cases, a clear pattern has emerged from the sentencing case law: a notable trend toward above-Guidelines sentences, based largely on the cruelty of the offense.

In 2016, the U.S. Sentencing Commission increased the base offense level of the pertinent Guideline, U.S.S.G. §2E3.1, from 10 to 16, in November 2016. The Commission stated that the increased base offense level "better accounts for the cruelty and violence that is characteristic of these crimes." Sentencing Guidelines for United States Courts, 81 Fed. Reg. 27,262, 27,265 (May 5, 2016). When it increased the base offense level in 2016, the Commission found that "offenders who received the base offense level of 10 under § 2E3.1" were sentenced to above-Guidelines sentences at a rate more than fifteen times higher than the average across all offenses. *Id.* Further, "[f]or those animal fighting offenders sentenced above the range, the average extent of the upward departure was more than twice the length of imprisonment at the high end of the guideline range." *Id*.; *see also id.* (finding "a high percentage of above range sentences in these cases").

In multi-defendant cases, or in cases involving regionally or nationally significant dog fighters, courts often have sentenced the primary defendants to terms of imprisonment at (or above, in cases involving multiple counts of conviction) the statutory maximum penalty of 60 months, based largely on the nature and circumstances of the offense (dog fighting). *See, e.g.*, *United States v. Anderson*, 3:13-cr-100 (M.D. Ala., Nov. 17, 2014) (ECF No. 723) (sentencing lead defendant to 96 months on two dog fighting counts, departing and varying up from 12-18 month Guidelines range); *United States v. Allen*, 3:13-cr-100 (M.D. Ala. 2014) (ECF No. 581) (same case, sentencing second most culpable co-defendant to statutory maximum penalty of 60 months on one dog

4

fighting count); *United States v. Hargrove*, 701 F.3d 156, 159-160 (4th Cir. 2012) (affirming 60-month sentence imposed on single dog fighting count for 78-year old defendant who had been a prolific dog fighter, where Guidelines range was zero to six months);[3] *United States v. Richardson*, 7:16-cr-122, 2017 WL 6055773, *2-3 (E.D.N.C. Dec. 1, 2017) (varying upward from 12-18 months Guidelines range to 96-month sentence on two dog fighting counts), *aff'd*, 796 Fed. App'x 795, 803 (4th Cir. Dec. 12, 2019); *United States v. Chadwick*, 7:16-cr-122, 2017 WL 6055384, *2-3 (E.D.N.C. Dec. 1, 2017) (same case, upward variance from 12-28 month Guidelines range to 60-month sentence on single dog fighting charge; affirmed in same appeal).

In other dog fighting cases, courts have sentenced defendants to terms of imprisonment that are less than the statutory maximum penalty, but that well exceed, or even multiply, the high end of the applicable Guidelines range, generally based on the nature and circumstances of the offense (dog fighting). *See*, *e.g.*, *United States v. McCoy*, 4:17-cr-40009 (C.D. Ill. Sep. 26, 2017) (sentencing defendant to double the high end of Guidelines range on dog fighting charge, 24 months); *United States v. Lee*, 3:11-cr-30092 (S.D. Ill. Nov. 17, 2011) (sentencing defendant to double the high end of Guidelines range on dog fighting charge, 12 months); *United States v. Jacobs*, 7:12-cr-84 (E.D.N.C. Mar. 6, 2013) (varying upward in dog fighting case to 29 months where guidelines range was 8-14 months); *Courtland*, *supra*, 642 F.3d at 553 (affirming upward variance in dog fighting case that more than tripled the Guidelines range sentence); *United States*

---

[3] In sentencing Hargrove to the statutory maximum of 60 months on the single count of conviction, the court made clear that it would have imposed an even greater sentence if it could have:

> It seems to me that the salient or critical event given the incredibly barbaric nature of this case, the critical event was being able to manage a plea to one five-year case. That drove the whole outcome of this case, because if he had been charged independently and . . . if he had been indicted for other charges, he would be facing significantly more time.

*See Hargrove*, Tr. of Sentencing H'g, 7:10-cr-135, ECF No. 42 at 45–46 (E.D.N.C. Aug 4, 2011).

*v. Love*, 3:17-cr-51 (D.N.J. July 8, 2019) (varying upward from 18-24 month Guidelines range sentence and sentencing dog fighting defendant to 54 months for trafficking in and possessing fighting dogs); *United States v. Arellano*, 3:17-cr-51 (D.N.J. Apr. 10, 2019) (varying upward from Guideline range of 15-18 months to 48 month sentence for regionally significant dog fighter); *United States v. Cuellar*, 3:17-cr-312 (D.N.J. Mar. 12, 2018) (sentencing cooperating, *de minimis* defendant in dog fighting case to twice the high end of his Guidelines range, varying upward due to nature of the offense).

Even after the Sentencing Commission increased the base offense level in 2016, defendants in some dog fighting cases have still received sentences well above the Guidelines range, which were sustained on appeal. *See*, *e.g.*, *Richardson*, *supra*, 2017 WL 6055773, *2-3 (varying upward from 12-18 month Guidelines range to 96 months), *aff'd*, 796 Fed. App'x at 803; *Chadwick*, *supra*, 2017 WL 6055384, *2-3 (same case, upward variance from 12-28 month Guidelines range to 60-month sentence; affirmed in same appeal); *United States v. Cook*, 7:16-cr-122, 2017 WL 6055385, *2 (E.D.N.C. Dec. 1, 2017) (varying upward from 15-21 month Guidelines range to 45 month sentence; affirmed in same appeal); *United States v. Thompson*, 7:16-cr-122 (E.D.N.C. Dec. 22, 2017) (varying upward from 24-30 month Guidelines range to 48 month sentence; affirmed in same appeal). Although not all federal defendants in dog fighting cases have received above-guidelines sentences, there has been a clear trend among judges in these cases to impose significant sentences. In a recent case arising from same investigation that netted defendant Murphy, the court varied upward from an 18- to 24-month Guidelines range and imposed an 84-month sentence. *United States v. Carrillo*, 8:23-CR-222 (M. D. Fl. Feb. 18, 2025).[4]

---

[4] The defendant was also convicted of being a felon in possession of a firearm under 18 U.S.C. §922(g). The court imposed the 60-month statutory maximum sentence for conspiracy to participate in an animal fighting venture, and another 24 months to be run consecutively on the firearms charge. A notice of appeal has been filed by the defendant.

To be clear, the government is <u>not</u> arguing that an above guidelines sentence is warranted here, and it does not recommend such a sentence. Instead, consistent with its obligations in the plea agreement, the United States is offering this legal background in support of its position that a top-end sentence of 18 months is warranted.

II.     **PROCEDURAL HISTORY FOR DEFENDANT'S CASE**

Following the execution of a federal search warrant on his residence on June 7, 2023, a grand jury returned an indictment on March 28, 2024, charging Murphy with nine counts of Possessing Animals for Use in Animal Fighting Venture, in violation of Title 7, United States Code, Section 2156(b). On November 26, 2024, Murphy pleaded guilty to all counts pursuant to a written plea agreement. In pleading guilty, Murphy admitted that he knowingly possessed pit bull-type dogs for use in animal fights.

III.    **FACTUAL SUPPORT FOR SENTENCING RECOMMENDATION**

As described in the Plea Agreement and PSR, an undercover investigation into a dog fighting ring in New York State revealed that the Murphy actively discussed dog fighting on recorded calls. For example, on June 14, 2021, Murphy spoke with a New York-based dog fighting target about breeding pit bulls, the results of dogfights, and injuries sustained by various dogs. Federal agents obtained search warrants for Murphy's Facebook accounts, which yielded significant additional evidence of Murphy's ongoing involvement in dog fighting, to include photographs and videos related to dog fighting over multiple years. For example, one account contained access to a private Facebook Group used by dogfighters to share the results of dogfights, buy and sell dogs for dog fighting, exchange information on training and conditioning dogs for dog fighting, and to engage in other dog fighting-related activities.

In addition, videos found in Murphy's Facebook accounts showed pit bull-type dogs physically tethered to different carpet/slat mills, i.e. treadmill-like devices that dogfighters commonly use to physically condition dogs for dogfights. Another video depicted a live raccoon caged in front of the carpet mill, to serve as a stimulus for the pit bull-type dog (included as Attachment B, Photo Exhibit 1).

In June 2023, federal agents executed a search warrant at Murphy's home in Hanson, Massachusetts, which revealed that he was keeping nine pit bull-type dogs at his home, along with a slew of animal fighting paraphernalia. During the execution of the warrant, agents observed that several of the dogs had scarring consistent with being involved in organized dog fighting. For example, one dog had severe, deep scarring around the neck and on the left front leg. Another dog had scarring on the front and hind legs, face, neck and head, as well as notching and scarring on the left ear, luxating patella (i.e., self-dislocating kneecap) in both knees, worn teeth, and several masses on the left flank, right front leg, and undercarriage). Another dog had scarring on the head and both front legs, notching on both ears, and scarring and/or hair loss on both back legs. *See, e.g.*, Photo Exhibit 2 (images of one of the scarred pit bull-type dogs seized from Murphy, USM-3).

Murphy possessed all nine pit bulls seized at his residence for participating in an animal fighting venture. Eight out of nine dogs were in locked pens (measuring approximately 10' x 10') or other locked crate-like housing structures. The remaining dog was wearing a thick collar and was chained to the ground. *See* Photo Exhibit 3.

Numerous items associated with an illegal dog fighting operation were observed at and/or seized from Murphy's residence, to include:

(i) Several treadmills, slat mills, and carpet mills, used to condition dogs to build stamina and muscle (*See* Photo Exhibit 4);

(ii) Flirt poles, used to entice a dog to chase a stimulus and Spring poles, used to build a dog's jaw strength and increase aggression (*See* Photo Exhibit 5);

(iii) Heavy chains and Dog collars, including one leather collar embossed with the text "GR CH ALPO" (i.e., "Grand Champion Alpo") and one leather collar with a metal plate engraved with the text "International Champion Gold Day" (*See* Photo Exhibit 6);

(iv) Break sticks, used to force a dog's bite onto another dog's body open, specifically at the termination of a fight or while training (*See* Photo Exhibit 7);

(v) Various "keep" regimens, found in correspondence, notebooks, published booklets, and on a whiteboard, prescribing a dog's training and diet in preparation for a fight (*See* Photo Exhibit 8);

(vi) Various informational and instructional books on dog fighting (e.g., "The Pit Bull Bible," "The World of Fighting Dogs," and "As the Son of a Dog Man . . . I Smell Blood"); (iv) DVDs and/or CD-ROMs containing interviews with dogfighters, videos of dogfights, and prior issues of the *American Game Dog Times* (*See* Photo Exhibit 9);

(vii) Breeding stand, used to restrain female dogs during breeding (*See* Photo Exhibit 10);

(viii) a significant quantity of veterinary supplies, such as antibiotics, deworming medication, wound care materials (including alcohol prep pads, iodine solution, chlorhexidine solution, and surgical forceps), medical supplies, (including syringes, I-V kits, and hemoglobin test kits), fertility medications, several types of steroids, (including winstrol (expired), an anabolic steroid), vaccines, painkillers, nutritional supplements, (including high calorie nutritional gel for puppies, injectable vitamin B-12 (expired), liquid B-12 for chickens, and canine exercise supplements for weight gain, tissue development, and stamina), Injectable bacteriostatic water (used to dilute or dissolve medications); a local anesthetic, and Lactated Ringer's injection, a solution used to replace water and electrolyte loss in patients with blood loss and/or low blood pressure (*See* Photo Exhibit 11);

(ix) Dog fighting clothing (*See* Photo Exhibit 12); and

(x) Digital hanging scales, and a test weight, used to weigh dogs for matches (*See* Photo Exhibit 13).

In addition to the foregoing, agents seized Murphy's cellular phone from the master

bedroom of his residence. A forensic extraction from that phone revealed significant additional evidence of Murphy's involvement in dog fighting, including multiple dog fighting videos. For example, agents viewed a 2-minute-and-10-second video of Murphy, wearing blue coveralls, encouraging a dog to fight another dog in a dog fighting pit. The video was contained in the Telegram application on the phone. (*See* Photo Exhibit 14, still shot from video). In addition, agents located WhatsApp messages between Murphy and other individuals discussing elements of dog fighting. Within one of those messages from March 2023 (approximately three months before the search warrant execution in Hanson), agents recovered a voice message sent from Murphy to an individual with whom he previously discussed dogfighting, in which he relates his anger over having animal control called to his property, complains about the 25 years he has invested in breeding and conditioning dogs, and asserts he will "never never never" quit what he is doing with the dogs.

## IV. SENTENCING CALCULATION

The United States concurs with the United States Probation calculations of the advisory Sentencing Guidelines. The PSR recommends level 13 and a criminal history category of I. PSR ¶ 96. Therefore, the advisory sentencing guidelines range for imprisonment is 12 to 18 months. The United States recommends a term of 18 months' incarceration. *Id.*

## V. ANALYSIS OF SECTION 3553(a) SENTENCING FACTORS

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those factors are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences

legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

In addition to the advisory Sentencing Guidelines range analyzed above, an analysis of the § 3553 factors supports the United States' argument that the defendant merits a term of imprisonment at the top of the guideline range of 18 months.

### A. Nature and circumstances of the offense

Dog fighting is a serious offense that involves subjecting animals to extremely cruel treatment, including pain, gruesome injuries, and death. Of the above-Guidelines range sentences imposed in dog fighting cases summarized above, many were premised on upward variances under 18 U.S.C. § 3553(a)(1), due to the nature and circumstances of the offense. For instance, in *United States v. Gaines*, a companion case to *Love* and *Arellano*, the court varied upward to a sentence of 42 months under the pre-2016 Guideline, finding that:

> this offense embodies such cruelty, just the enterprise of training dogs to fight, of staging dogs to fight, of keeping dogs in boxes in the basement, of medicating them by people who are not trained in medicine, clearly not professionals, all of the materials that were seized showed how these dogs were treated by these amateurs with all kinds of medications that were for cattle and for other kinds of animals, the very concept of this enterprise of staging dogs to fight each other and kill each other is so despicable and so uncivilized that I think the nature of the offense warrants a variance.

*United States v. Gaines*, 3:17-cr-309, Tr. of Sentencing H'g at 17 (D.N.J. Mar. 5, 2018), *aff'd*, 765 Fed. App'x 730, 733 (3d Cir. Apr. 3, 2019) (affirming above-Guidelines sentence and remarking that the case was "a sad reminder that man's best friend is susceptible to man's worst impulses"); *see also id.* at 19 ("I don't know that there's any way we can quantify really how harmful this crime is").

11

A different district judge sentenced other defendants in that case, and likewise found that:

> dog fighting ventures engage in a very depraved, horrific, cruel, activity. There needs to be some deterrence to this criminal conduct generally, because I'm not certain that many people in the United States understand that this is criminal conduct . . . and it's, as I said, depraved. So it needs to have a serious penalty with it, and that's why I'm varying upwards.

*United States v. Ware*, 3:17-cr-51, ECF No. 296, Tr. of Sentencing Hrg. at 24 (D.N.J. May 29, 2019) (varying upwards by 10 months as to lower-tier defendant who possessed only two fighting dogs); *see also United States v. Ware*, 2020 WL 1677077, *2 (D.N.J. Apr. 3, 2020) (denying motion for bail pending appeal in part because dog fighting is "a serious and inherently violent crime"); *United States v. Atkinson*, 3:17-cr-222, Tr. of Sentencing H'g at 67-68 (D.N.J. Apr. 18, 2018) (varying upwards by 12 months because "[t]here needs to be a longer period of imprisonment. We need to give a message to society that anyone that's involved in dog fighting is going to be subject to greater penalties than this, because the activity itself is depraved – it's just a very depraved activity; it's horrific and it's upsetting to everybody to see that our animal friends would be treated in such a manner").

Indeed, the entire purpose of keeping dogs to engage in dog fighting is to ensure that your dog will be able to inflict the most damage upon the other dog in the fight, thereby ensuring your dog wins the fight and escapes with as little damage to it as possible. Not only is there a substantial risk of the use of physical force against the property of another, indeed, the use of force is the heart of the enterprise itself. But for the contemplated and actual use of force, often lethal force, by one dog against another's there would be no "animal fighting venture" and no crime.

As applied to the charges in this case, Murphy pleaded guilty to possessing nine pit bull-type dogs at his home for the purpose of engaging in a dog fighting venture. These crimes go far beyond other possession crimes, such as the charge of felon in possession under 18 U.S.C. 922(g)(1), because it requires more than mere possession. It requires a violent purpose. In other

12

words, the defendant did not simply possess a dog, or even possess a "fighting dog," but rather he possessed possessing nine dogs *for the purpose* of engaging in the inherently physically violent and cruel venture of dog fighting. Defendant's participation in this dog fighting venture likewise merits a top-of-guideline sentence of 18 months.

### B. History and Characteristics of the Defendant

The history and characteristics of the defendant support the sentence of incarceration recommended by the United States. This was not an isolated incident, as the conduct appeared to stretch on for years. Furthermore, the evidence gathered from Murphy's residence, Facebook history, and recorded phone calls demonstrate that his participation in the dog fighting venture for which he kept these nine dogs included arranging, participating, and profiting off of multiple dog fights during the course of his years' long conduct in addition to breeding and selling dogs for future fights.

### C. Seriousness of the Offense, Respect for the Law, and Just Punishment

The Court's sentence should reflect the scope and seriousness of this offense, and the need to promote respect for the criminal laws in the District of Massachusetts.

### D. Need to Afford Adequate Deterrence to Criminal Conduct

Over the last decade, there has been increased public awareness of the serious, violent nature of animal fighting, as reflected by Congress's repeated strengthening of the Animal Welfare Act.[5] The recent amendment of the substantive guideline by the Sentencing Commission,

---

[5] Congress has strengthened the law five times over the last fourteen years, including: the Animal Fighting Prohibition Enforcement Act of 2007, Pub. Law 110–22, 121 Stat. 88, which increased animal fighting from a misdemeanor with a one-year statutory maximum to a felony with a three-year statutory maximum; the 2008 Farm Bill, Pub. Law 110–234, Sec. 12407, 122 Stat. 923, which raised the statutory maximum to five years, relaxed the interstate commerce element, and added substantive prohibitions; the 2014 Farm Bill, Pub. Law 113-79, Sec. 12308, 128 Stat. 649, which made attending animal fights a misdemeanor offense and added a felony offense for bringing anyone 16 years or younger to an animal fight; and an

discussed above, further underscores the seriousness of the offense. *See* Sentencing Guidelines for United States Courts, 81 Fed. Reg. at 27, 265 ("[t]he Commission [ ] determined that the increased base offense level better accounts for the cruelty and violence that is characteristic of these crimes"). Also, given the extensive, secretive networks that are needed to solicit opponents and to locate, buy, and sell dogs of coveted bloodlines, dog fighting is organized crime in the traditional sense of that term.[6] Indeed, it was an investigation in New York that uncovered the interstate network and led law enforcement to Murphy in Massachusetts.

Dog fighting is a highly secretive enterprise that is difficult for law enforcement and investigative professionals to infiltrate. A dog fighting investigation requires many of the same skills and resources employed in major undercover narcotics investigations, thus challenging the resources of any agency that seeks to respond to it.

Given the limited law enforcement resources available for cases such as this, and the strain it places upon animal shelters called upon to care for the large numbers of dogs seized in these investigations, it is imperative that the sentences imposed in the few cases that can be brought send a strong message of deterrence. Those who choose to brutalize animals for entertainment and profit must know that their criminal conduct will be severely punished. *See Gaines, supra*, Tr. of Sentencing Hrg. at 18 ("animal cruelty is a horrible offense, uncivilized, and warrants punishment and deterrence. It's important for society to know that this is a serious offense, that it's a grievous offense, that the animals deserve something better than this").

---

amendment effective December 20, 2019, which broadened the reach of the statute to all U.S. territories. *See* Pub. Law 115-334, Sec. 12616(a)-(c), 132 Stat. 5015.

[6] In recognition of the seriousness and violent nature of the charges (now offenses of conviction), Magistrate Judge David H. Hennessy specifically found at Murphy's detention hearing that 7 U.S.C. § 2456(b) constitutes a "crime of violence" for purposes of the Bail Reform Act. ECF No. 23.

Consequently, a strong sentence is needed to "afford adequate deterrence to criminal conduct," both to the defendant and to other potential offenders. 18 U.S.C. § 3553(a)(2)(B). To advance the goal of specific deterrence, the United States also requests that the Court require a condition of supervised release that the Defendant shall not possess or engage in the sale or transport of any pit bull-type dogs.

### E. Need to Avoid Unwarranted Sentencing Disparities

The federal dog fighting cases, cited above, provide a reference point in avoiding unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6), because in those cases, as in this matter, the defendants had varying roles, and their varying sentences reflected that.

For example, in *Anderson*, the defendants ranged from a regionally significant dog fighter (Anderson) to a defendant whose sole involvement was as a passenger found in a co-defendant's car with the co-defendant's fatally wounded dog (McDonald). *See Anderson*, *et al.*, *supra*, No. 3:13-cr-100 (M.D. Ala.) (ECF No. 208) (second superseding indictment). The prison sentences varied from two months (for the passenger) to 96 months (for the ringleader). The middle-tier participants in that conspiracy received sentences ranging from 36 months to 48 months. The *Anderson* defendants were sentenced under the pre-2016 substantive Guideline (offense level of 10 instead of 16 points), and most of the sentences were multiple times the high end of the Guidelines range.

In the *Richardson*, *et al.* case, the court sentenced seven dog fighting defendants to sentences ranging from 96 months for the ringleader (varying upward from 12-18 month Guidelines range), to four years of probation for the least culpable defendant, who had spectated at a dog fight but otherwise had no involvement of his own in dog fighting. *Richardson*, *supra*, (E.D.N.C. Dec. 1, 2017 and Dec. 22, 2017). The middle-tier defendants received sentences ranging

15

from 45 to 60 months. *Id.* The Fourth Circuit recently affirmed each of these sentences on appeal. *Richardson*, *supra*, *796* Fed. App'x at 803.

The *Arellano, et al.* case was premised exclusively on the trafficking of fighting dogs; there were no charges for sponsoring or exhibiting an animal in a dog fight. *See Arellano, et al.*, *supra*, 3:17-cr-51 (D.N.J. Apr. 10, 2018). That case was sentenced under the old base offense level (10 instead of the current 16). All but one defendant received an above-Guidelines sentence. The participants broke into three tiers. The top tier of participants in the conspiracy received sentences of 54, 48, and 42 months. This included, respectively, the conspiracy's most violent and obstructive player, a regionally significant dog fighter who acted as the source of supply, and the hub of the conspiracy. The hub participant pleaded early, and the other two top tier defendants were convicted at trial. The middle tier participants all pleaded guilty and were sentenced to 24, 18, and 17 months. Two of the lower tier participants were convicted at trial and sentenced to 24 months each. The sole cooperating defendant received a sentence of double the high end of his guidelines range, 12 months. Most of these had a criminal history category of I.

The United States' recommendation of a top-end of guideline sentence is appropriate in that it ensures that Murphy is treated similarly to other defendants who have possessed dogs for fighting. It would also meet the goals Congress set forth in § 3553 that would be "sufficient, but not greater than necessary."

VI.     CONCLUSION

       Based on the foregoing and for the reasons to be articulated at the sentencing hearing, the United States respectfully recommends that the Court sentence the defendant to 18 months of imprisonment, to be followed by three years of post-release supervision. Furthermore, the United States urges the Court require the defendant to pay a fine of $10,000.

                                                  Respectfully submitted,

                                                  LEAH B. FOLEY
                                                  United States Attorney

By:     By: /s/ *Danial E. Bennett*
            Danial E. Bennett
            Kaitlin J. Brown
            Assistant U.S. Attorneys
            United States Attorney's Office
            595 Main Street, Suite 206
            Worcester, MA 01608
            Danial.Bennett@usdoj.gov
            508-368-0104

            ADAM R.F. GUSTAFSON
            Acting Assistant Attorney General
            Environment and Natural Resources
            Division
            United States Department of Justice

By:     */s/ Matthew T. Morris*
            Matthew T. Morris
            Senior Trial Attorney
            Environmental Crimes Section
            GA Bar No. 524420
            800 Market Street, Suite 211
            Knoxville, TN 37902
            Phone: (202) 598-3105
            Email: matthew.t.morris@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ *Danial E. Bennett*
Danial E. Bennett
Assistant U.S. Attorney
United States Attorney's Office
595 Main Street, Suite 206
Worcester, MA 01608
Danial.Bennett@usdoj.gov
508-368-0104